So our next case is number 22, 1883, Johnson v. McDonough. May it please the court? No, you have to wait for me to call on you. Of course. Apologies, your honor. It's avocado. Okay, go ahead. Go ahead. May it please the court? Alexandra Avocado for Appellant George Johnson. I'd like to reserve three minutes for rebuttal. There's no dispute here that VA doctors committed an error in judgment when they punctured Mr. Johnson's colon and then failed to diagnose. Why don't we discuss first the question of finality? I mean, you presented in your opening brief argument that there was a final judgment here, and yet that argument would seem to be directly inconsistent with Williams and the cases that followed it. And putting aside the question of forfeiture, there doesn't seem to be much of an argument that this satisfies the Williams finality standard. Is there such an argument? We do believe there is, your honor. And what is it? So even setting aside the government's waiver of the finality issue, we think that this court can review the remand order because this case is squarely controlled by Adams. And here, I just want to emphasize that the rule in Adams is that when an appellant has a colorable argument that the very fact of remand will violate his rights, then this court reviews that remand order. How does a remand here violate his rights? It's just not deciding an issue which would remain open on an appeal from a final resolution. We disagree with that characterization, your honor, because here, the very fact of the Veterans Court's remand order will force Mr. Johnson to undergo a proceeding that will violate his due process rights. It's true of every remand. That doesn't distinguish this case from many others where we've held the remands where there's a remand, there's not a final order. I mean, if he wins on the remanded issue, the issues that you're seeking to argue here today become irrelevant, right? This case is different from previous cases where this court has declined to review remand orders because in those cases, an appellant was simply arguing that there might be some legal error in the remand proceeding, usually a misinterpretation of a statute or regulation. The argument here that the very fact of remand will violate Mr. Johnson's constitutional rights. How does it violate his rights? I don't understand that. So we think, again, we think that Adams applies here. There, the appellant argued that the Veterans Court did not have the authority to order the particular remand it ordered there. So too here, if Mr. Johnson is correct that the Veterans Court didn't have the authority to order a remand with the changed record of it. They didn't have the authority? You never argued they didn't have the authority to order a remand. We did, Your Honor. I think if you look to our reply brief, we argue that the relief we're seeking is a remand in which Mr. Johnson can seek entitlement to an earlier effective date without the tainted record evidence. And so there we were challenging the remand order that the Veterans Court had ordered on the argument that that remand order would be a fundamentally unfair proceeding. And so we do think we raised this argument below. What does the due process issue have to do with the availability of the records, which is the subject of the remand? We don't think that's the correct question here. And again, we answer it even if it's not the correct question. Your Honor, we do think that there is a relationship between those two issues in that, given that the tainted evidence will still be in the record, that will affect Mr. Johnson's, the strength of Mr. Johnson's arguments on the remanded cue claims because of that unfair evidence in the record. And of course, it will still subject Mr. Johnson to a fundamentally unfair proceeding. And I just wanna highlight that in cases like Adam's, the question that this court asks is not whether there could be some hypothetical future remand that would be fair. It asks whether the remand order that the appellant is currently challenging will violate their legal rights. Once the answer to that question is yes, I believe Adams instructs that this court should review that remand order. And maybe at this point, it would be helpful to explain why these fundamentally unfair aspects of the record violated Mr. Johnson's due process rights. Go ahead. I'd like to begin with her arguments that Dr. Fromm was a decision maker on the facts of this case. And here, I think it's important to look to the very beginning of the procedural history of Mr. Johnson's benefits claim. The regional office initially denied Mr. Johnson's claim. And it was only when Mr. Johnson filed a notice of disappearance that the regional office solicited Dr. Fromm's opinion. When it did so, it didn't solicit any other evidence. And the regional office tasked Dr. Fromm with deciding the ultimate legal issue that the office was tasked with deciding, whether Mr. Johnson had an additional disability and whether that was the fault of the VA. Didn't they task him with giving an opinion on that so that they could make the decision? We, that may be how the relationship breakdown between medical examiners and the regional office should occur in most instances. But we think that as a practical matter here, the fact that Dr. Fromm's opinion was the only evidence that the regional office was going to be considering in reconsidering Mr. Johnson's claim, made his, effectively meant that the regional office was going to adopt that conclusory opinion. That's an argument that the whole process was a sham, which I don't think you've really made. We don't believe that the, we don't think that a finding to that effect is necessary. And we certainly don't think that every time a VA medical examiner is offering an opinion that he becomes a decision maker. It's just on the unique posture of this case where it was only Dr. Fromm's opinion that was going to be conclusive to the regional office's determination that his opinion effectively cut off any further inquiry into the benefits claim and where his role became that of a quasi-judicial decision maker. Just to stress, we're certainly not arguing that this breakdown happens in every case. Why are these even due process claims? Can't you either, couldn't you have it in an earlier part of the proceeding or now on the remand? Can't you just put your factual challenges to this evidence that you say is tainted for the decision maker? No, Your Honor, we don't think that's a cure. And I think this goes to why the government's relying. I'm happy to hear why it's not a cure, but you can do that, right? On the remand, you can put these arguments in front of the fact finder. We're not sure whether that's possible. Again, the Veterans Court's remand order, unlike other remand orders, didn't offer Mr. Johnson the opportunity to renew these arguments before the board. But even if he were able to do so, the fact that Mr. Johnson might be able to challenge the fairness and veracity of that evidence doesn't address the due process violation that occurred from the entry of this tainted evidence in the record. But I'm looking at, I guess the document that's at page 3792 through 93 of the joint appendix. This shows that both the what I'll call by way of shorthand, the Wallace issue and the Fromm issue were known to Mr. Johnson. And how, you know, he had a chance to explore this issue. The board didn't agree or the board found no problem. We know the decision the board made in 03. Is this really a due process violation? Now, this seems to be different from the cases like Cushman where we found violations. Here, the evidence was there. Everybody knew what the evidence was saying. And it was adjudicated, if you will, by the board. We do think that this case is still squarely controlled by Cushman. There's no meaningful due process distinction here based on the fact that Mr. Johnson was aware of this evidence in the record. And again, that's because simply giving a litigant the opportunity to challenge the veracity or fairness of fundamentally unfair evidence does not cure a due process violation arising from that. That comes in all the time where there's a dispute about whether it proves the case or doesn't prove the case. Isn't that what we have here? No, Your Honor. So on our theory that Dr. Fromm is a biased decision maker, the government cites... But he's not a decision maker. He's a witness. We do believe he's a subsidiary decision maker in this case in which... And what case suggests somebody in his position is a decision maker? So we think that our argument flows from basic... I asked you what case. Sure. So we know from cases like Morrissey and Goldberg that even subsidiary decision makers must be impartial, even if there is a separate final decision maker here. What makes him a subsidiary decision maker? Because under these circumstances... What case involved a witness like this who's treated as a subsidiary decision maker? I think the principle here comes from the Supreme Court's decision in Toomey because it explained there... So Toomey doesn't involve a situation like this? No. I agree that the facts... So there's no... So you don't have a case? Not factually on point, but I do want to emphasize that Toomey explains that a quasi-judicial role can arise when somebody's opinion effectively cuts off further inquiry into an issue. And we think that's exactly what Dr. Fromm's opinion did here. It cut off further inquiry. It wasn't being weighed against any other evidence, given the posture in which it arose. I also want to point to the pages in the record that you mentioned, Judge Schall. Even though Mr. Johnson might have questioned the strength of certain aspects of the record, he certainly was not raising a due process argument there. And in those pages, there's no indication that the board would have understood the extent of Dr. Fromm's involvement. In particular, those pages don't mention his supervisory role in the aftercare. And so we don't think that there's any possibility that the 2003 board was aware that the multiple statements the VA made about Dr. Fromm's non-involvement were in fact false. And that's the key here. As soon as these false statements were made in the record by the government, then the due process violation occurred, whether you view Dr. Fromm as a decision maker or as a mere witness, as the government argues. I don't understand that last part. If he was just a witness, hopefully it doesn't happen often, but witnesses do sometimes come into court and not tell the truth or not disclose their own biases. That's just part of adjudication and hopefully the other side has contrary evidence or a good cross-examination. What makes it a due process violation on the assumption that he's not a decision maker, but just a witness? Because this isn't a case where a witness simply shows up to court and lies. This is a case where the government made false statements going to Dr. Fromm's reliability and bias. And we know from Cushman that the VA's presentation- The government made false statements? Where did the government make false statements? So at appendix pages 3822 and 3813 in two different parts of the record before the board, the VA stated that Dr. Fromm was a specialist who was not involved in Mr. Johnson's case. There's no question that those statements were inaccurate. So there's no dispute of falsity here, just as there was no dispute of falsity in Cushman with respect to the VA's statements there. And so we know from Cushman that when the VA presents false evidence, that due process is violated. And Cushman even made a point to stress that fraudulent intent on the part of the presenter of the false evidence is not required for a due process violation. If you get your full relief on remand, what's left of the due process claims? Your Honor, we do think that full relief on remand would address the relief we're seeking here, but we don't think- But what is that relief? If you get the date for the start of the benefits that you're looking for, and which is on the table as a possibility on the remand you already have, right? That's correct. Then what's left of it? In that world, what's left of your due process claims? Your Honor, in that world, the due process claims could no longer be an issue, but we don't think the court has to look to that hypothetical question of what might happen there until and unless there is relief on the remanded Q claim. And again- Just one question. What is the, if you know now, what is the present status of the remand proceedings? To our knowledge, nothing has happened in the remand proceedings since the veterans court's remand order. We're not aware of any orders or any movement on at the board level. So we believe nothing has happened. With that, I do just, I see that I'm running into my rebuttal time. So I do just want to quickly flag our second independent due process argument, which is that the board relied on a fabricated medical note written by Dr. Wallace right after he punctured Mr. Johnson's colon. Contrary to the government's argument, the Wallace note is not a mere unexplained inconsistency in the evidence, which we concede would not pose due process issues. Here, the only inference that the record supports is that the note was fabricated in an effort to shield Dr. Wallace from potential repercussions from his error. And we believe that the 2018 board's rejection of that fabrication claim was a legal error because it ignored the important circumstantial motive evidence that Mr. Johnson raised. Once that legal error is corrected, we think that the only reasonable inference is that the Wallace note was in fact a fabrication. And here, I'll want to just briefly touch on the circumstantial motive evidence here. We know that Dr. Wallace would have seen Mr. Johnson jump off the table in pain multiple times during the procedure, a reaction that should not have occurred. We know, and so Dr. Wallace would have known he likely injured Mr. Johnson  and that would have given him a motive to fabricate this note. I think it's also important to note that Dr. Wallace's note is the one outlier among numerous other uniform medical statements that Mr. Johnson had no prior history of diarrhea. On those facts, we think it's clear that the Wallace note was a fabrication. If there are no further questions, then I'd like to reserve the rest of my time for rebuttal. Okay, thank you. Mr. Yale. Thank you, Your Honor. May I please the court? I guess we'd first like to address the finality issue. We submitted our response on that issue. We think that cases like Williams and Joyce... Say, let me ask you, one of the lead arguments that the other side makes, Mr. Johnson makes, on the finality issues, this was waived. That nothing was said about it when the briefs were filed. As our rule contemplates, you could have argued. And then when the opening... I'm sorry, when the appeal was filed, and then when the opening briefs were filed in your response, you didn't challenge finality. I mean, that's correct, Your Honor. Was there a reason for that? Well, I'm not going to say it's anything other than we missed the issue. I think below at the Veterans Court, the presentation of the issues was relatively... It was not that straightforward. But I'm not going to say it's anything more than that. But I also think that Mr. Johnson's counsel hasn't pointed to any times where this court has found a waiver with respect to this particular issue. Now, whether or not... Obviously, if it's not a jurisdictional issue, in theory, there could be such a thing. I'm not sure exactly why the court would want to cast aside Williams and Joyce, which seem to be squarely on point, at least at this point. Well, they're certainly on point in terms of the merits of the finality issue, if we get to the finality issue. Correct. And again, I mean, the court issued a show-cause order. We gave our response. Again, we didn't point to the issue initially. So, I mean, that's a mistake that we can own. But I also think that I don't think there's been an instance of this court... This court has taken the issue of finality seriously. I don't think there's been one example where it's been determined to be waived, even in situations where this court has issued orders, you know, show-cause orders with respect to finality. And how would it undermine the seriousness of finality to hold the government to the arguments it made and the mistake it made? Well, again, that's in the discretion of the court. I mean, I think that, you know, we've made our arguments on the merits with respect to finality and fitting it within the Williams and the Joyce framework. We think under Joyce, either if it's viewed as one claim or multiple claims, then there's, you know, under any of those situations, there would not be a final Veterans Court decision with respect to the issue of looking at whether there's been an independent violation. I guess the answer is that the Williams line of cases suggests that the finality rule is not there just to protect the government. It's to protect the system. Well, exactly, Your Honor. It's to protect, for example, this court. And it's in this court's discretion as to whether or not they want to be piecemealing, dealing with issues when at the end of the day, you know, I think there's, my colleague had a lack of focus on the issue of what in particular is the remanded issue here. So the remanded issue is this records issue and they can get full relief under that issue. And so the situations where this court has found that there was not, that this court would overlook sort of the finality issues, would be situations where the remand itself would violate the rights. But that's not the case here. There's no argument that the remanded issue here, this records issue, would somehow violate the rights of Mr. Johnson. If the importance of finality is to protect us as well as other interests, but to the extent it's to protect us, don't we want to send a message to the government that we would like your help in helping protect us? And you failed in this instance. So why should we go ahead and say, well, we're going to not do anything about that? Well, I mean, again, I guess, you know, we think that, you know, under Williams and Joyce, there's a lack of finality. It's in the discretion of the court to, you know, determine whether or not that's a basis here. I mean, we can certainly get into the merits of these issues that, you know, as we set forth in our brief, or just not just don't rise to the level of due process. What does it do to the incentive that we might want out there for the government to help us find cases that maybe don't belong here if we have to identify them ourselves anyway, and then ask everyone to write supplemental briefs? Well, your honor, I mean, in this situation, I think if you look at the context of the board's decision, where there's four Q claims, you look at the context of what was raised to the Veterans Court, where it didn't seem to be that we still had four particular Q claims there, that there was certainly confusion as to what was raised down below. And I think the Veterans Court itself, in its opinion, what had some confusion as to what was actually raised. I don't think it would be particularly fair in this case to make an example out of this particular case. I think the government takes its obligations with respect to finality seriously, and with respect to this particular issue. And again, I think part of this is, this case leaps off the page that the actual issues presented here, just on the merits, do not rise to the level of due process concerns. But again, I... Excuse me for cutting in there a bit. But I asked Ms. Avocado, can you tell us anything about the status of the remand proceedings beyond what she said? I don't think I can add much to that, other than the fact that there's been, my understanding is, there's been no mandate issued. I think it would have been possible for either Mr. Johnson or both parties to go and have a specific mandate issued with respect to the remanded records claim. But I think probably at this point, the board, I think my understanding would be that the board, there's been an appeal of that veteran's court's decision. And so the board is aware of what's transpired, but I don't think there's been further, any additional orders at that point. And I guess it happened commonly when there's a remand, that they don't implement the mandate on the remand order until what? Well, I think my understanding of the issue would be once the veteran's court issues its decision, and if there's an appeal, the board is not aware. I mean, a number of things could happen, right? I mean, for example, the government could cross appeal on any particular issue or something like that. And so I don't think until the veteran's court sends the mandate so that the board knows exactly what it's doing, that they would be in a position. I mean, this is my understanding of what they would be doing. Now, there's obviously separate situations that this court deals with all the time, where, for example, there's- So what you're suggesting is that the mere fact that they've taken an appeal delays the proceeding? I think that's probably as a practical matter, how the board views it. But I'm not, standing up here right now, I can't give 100% certainty on that. There's obviously other situations where, for example, if the board still has jurisdiction, for example, if there's a writ of mandamus or something along those lines, where those are sort of different situations where the board actually still has jurisdiction and can be pursuing sort of actions at that point in time. One question, Mr. Ian, and you may, neither you nor Ms. Avocado may be able to answer this. But is there any indication in the record that now exists as to whether there is significant overlap or identity between the documents that we have in the record before us and these documents that are the subject of the remand order? Well, my understanding, and just based on the records, it's really an independent Q claim as sort of with respect to factual overlap. And here's why. It's because the argument is that there was... No, I'm saying there are different documents involved in the remand. In other words, these are coming from Buffalo, right? They are, Your Honor, but I think that... Are the Buffalo documents, if you know, supposedly different from the documents now in the record? That's just a fact question, not a legal issue. Just so I can explain, Your Honor, the argument is that those documents were destroyed and Mr. Johnson has pointed to along those lines. So the documents don't actually exist anymore. So there's a factual question as to, I guess, what those documents were. But the argument, as I take it, with respect to Q that Mr. Johnson was making is that there would be an adverse inference there. And so that those documents, essentially, that issue on itself could be Q because if those documents had been destroyed and those documents, for example, dealt with this gap in the medical records, then that in and of itself could be Q, independent of any other, any of these other particular issues that we're dealing with here. That's just another way for Mr. Johnson to have established Q based upon that. And so I don't... As to what those records are, they no longer exist. I think there may be... They don't exist in any... Totally non-existent, right? There's none of them left. That's my understanding based upon what the Veterans Court... What they were pointing to. But again, I think there was a separate... What part of what the remand is getting at is, one, is there evidence or whatnot as to what those documents were? And two, should an adverse inference be employed there? And if all of those played out in Mr. Johnson's favor, I think the argument would be, and I think that's why the Veterans Court remanded, that he may be able to establish Q under those circumstances. Do you have a view on whether in the ongoing remand, he can raise the due process issues? You know, I don't think we've... I don't think we've briefed that particular issue. I'm not sure how those would actually come up here. But again, sort of similar to... As sort of Joyce pointed out, he would always have the opportunity, for example, if the board were to find that Q was not established, he could, you know, again, challenge the various issues. What about his fundamental due process argument that the remand itself will be a violation of due process because it will be tainted by this evidence that shouldn't be there? And does he have to be right on that to, you know, meet prong three of the Williams test or does it just have to be sort of a colorable possibility? Well, you know, I mean, I think it's his burden to establish that. I don't see that there's been any argument that's been made linking that issue, that first Q issue with respect to these records to these due process challenges. So I don't see... I would have thought the idea would be if he's going to ask for an adverse inference and the totality of the rest of the record, he's more likely to prevail on his Q claim because the records can be more favorable to him if this tainted evidence is excluded. Well... And I would have thought... I thought he had made that argument, but maybe I'm incorrect. Well, I'm not sure where that argument was made linking it to this particular issue. It is such an argument. There was nothing to... on the remand of Orion for making that argument, right? There would be nothing on remand as to why he can't make that argument. Again, when we're looking at Joyce in those cases, really what the problem would be is if on remand the issue we're dealing with somehow disappeared completely and there's really no argument that that would be the case. I mean, we just don't see how that argument would disappear. The only circumstance in which it would disappear would be if he actually prevailed on his claim, the Q claim, with respect to the records. And in that situation, he gets the earlier effective date. And all of this stuff falls away because he can't get more relief. There's not an independent due process compensation that he would be able to get. So he would get the earlier effective date and that would be it. And again, I see my time's almost up. I'm happy to address the two due process violations. At the end of the day, those are just not genuine constitutional violations. The hallmarks of due process, it's notice and opportunity to be heard. With respect to the note that was in the record, one, so he had notice of it. He had an opportunity to argue about it. It was presented in the records. But two, there was actually no prejudice here. Because if you look closely at the 2003 board decision, the finding there was based on a lack of negligence. And that finding is straightforward. It's based upon the medical opinion and it's based upon the fact that we have a perforation of the colon and we have a medical opinion by a witness, not a decision maker, saying that there was a lack of carelessness because perforation of a colon is a commonplace complication for a colonoscopy. So that deals with- We ultimately didn't prevail on the negligence in the course of the operation. It prevailed on negligence after the operation and delay of treatment, right? Well, that's correct. But that doesn't go to the fact that at the time, when we're talking about a due process violation, it's just the fact that you get notice and opportunity to be heard. So that's what we're dealing with here. And Judge Dyke, that observation bolsters our argument because even at that time, once the later board opinion came out based upon new and material evidence, that didn't contradict the finding that perforation is somehow not a common complication. It was based upon a different reason, which was this time period which is sort of a different slant, a different view on sort of, with respect to that particular medical opinion. I think we're out of time. Thank you, Mr. Young. Thank you. Just a few points on the finality issue and one point on the merits. I think the government's responses to this court's questions confirm that there is no reason for the court to overlook the government's labor here. And thus, it may not even reach the Williams question. But even if it does reach the Williams question, we think that we satisfy that standard. Again, the Joyce case is not strictly relevant here because we are arguing for the ability of this court to review the order on a different reasoning based on the remand violating his rights, not the separable and distinct claims. I also want to point to something Judge Stark mentioned. We did draw a connection between the remand and the due process violations here. As we mentioned, without the presence of the tainted evidence in the record will affect the remand proceedings below. Finally, on my last few minutes, a note on... You're actually out of time. All right. I'll give you 30 seconds more. Go ahead. Thank you, Your Honor. The notice and opportunity to be heard here is not relevant because the due process guarantee guarantees not just a certain amount of process, but that that process be fundamentally fair. As this court observed in Cushman, if a proceeding is fundamentally unfair because of tainted record evidence, no amount of additional hearings or appeals will cure that due process violation. The cure is a new proceeding absent that tainted evidence, precisely what we're asking here. Now that my time is well and truly up, we'd ask the court to reverse and remand with instructions for a new and fair hearing. And as reflected in our filing last night, we would also request 14 days for us to file supplemental... We'll give you the 14 days to presumably to move for someone to intervene. Thank you, Your Honor. We appreciate that time. Thank both counsel. The case is submitted.